UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE | § | CASE NO. 20-11512 |
| | § | |
| BRENDA L. BOWMAN, | § | CHAPTER 13 |
| | § | |
| DEBTOR. | § | SECTION A |

**MEMORANDUM OPINION AND ORDER**

The Court held an evidentiary hearing on October 29, 2021, (the "Hearing"), on the *Motion To Dismiss Due to Debtor's Ineligibility and Bad Faith* (the "Motion To Dismiss"), [ECF Doc. 30], filed by the United States of America on behalf of the U.S. Department of the Treasury, Internal Revenue Service (the "IRS") and the Response thereto filed by Brenda L. Bowman ("Mrs. Bowman" or post-petition, the "Debtor"), [ECF Doc. 36]; as well as the *Debtor's Objection to Proof of Claim #4, Internal Revenue Service* (the "Claim Objection"), [ECF Docs. 48 & 53]. The Court heard testimony from the Debtor, Pernell J. Pellegrin, Tiphany Varner, and Nathan Matherne and admitted into evidence IRS Exhibits A–PP & WW–MMM and Debtor's Exhibit 11. At the close of the hearing, the Court took the above matters under advisement. Having considered the pleadings, the evidence presented, the arguments of the parties, the record as a whole, and applicable law, the Court OVERRULES the Debtor's Claim Objection and GRANTS the IRS's Motion To Dismiss.

**JURISDICTION AND VENUE**

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334, the Order of Reference of the District Court dated April 22, 2021, and 26 I.R.C. § 6015(e)(1)(A). *See Pendergraft v. I.R.S. (In re Pendergraft)*, Adv. No. 16-3246, 2017 WL 1091935, at *3–4 (Bankr. S.D. Tex. Mar. 22, 2017) (interpreting 26 I.R.C. § 6015(e)(1)(A) to

confer subject-matter jurisdiction upon bankruptcy courts to determine whether innocent spouse relief should be granted after a denial on a final basis by the IRS Secretary). The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (B) & (O). The venue of the Debtor's chapter 13 case is proper under 28 U.S.C. § 1408.

## BACKGROUND

The Debtor filed a petition for bankruptcy relief under chapter 13 of the Bankruptcy Code on August 27, 2020 (the "Petition"). [ECF Doc. 1]. On September 16, 2020, the IRS timely filed a proof of claim asserting a secured claim in the amount of $96,759.00, a priority unsecured claim in the amount of $2,097.38, and a general unsecured claim of $525,321.64. *See* Proof of Claim 4-1. On September 29, 2020, the IRS filed the Motion To Dismiss requesting dismissal of the Debtor's Petition on the grounds that the Debtor's noncontingent, liquidated, unsecured debts exceed the statutory jurisdictional limit to qualify for chapter 13 bankruptcy relief. *See* Motion To Dismiss, ¶¶ 5–7. Additionally, the IRS accused the Debtor of filing her bankruptcy petition in bad faith due to omissions and misrepresentations in her bankruptcy Schedules. *Id.* ¶¶ 8–15.[1]

The Debtor filed a response to the Motion To Dismiss on October 13, 2020, asserting that her liabilities do not exceed the statutory debt limit for chapter 13 relief because she qualifies for relief from penalties resulting from underpayment of taxes under the "innocent spouse rule," codified at § 6015 of the Internal Revenue Code. *See* Response, ¶¶ 7–9 & 14. Specifically, the Debtor claims that she qualifies for tax relief as an "innocent spouse" because (i) the attribution of

---

[1] At the Hearing, the IRS did not expressly forfeit its allegations as to bad faith; however, the IRS presented no evidence in support of its bad-faith allegations and admitted that the focus of the evidence related to the Debtor's claim for "innocent spouse" tax relief. Accordingly, with no evidence presented as to the bad faith of the Debtor in filing the Petition, the Court treats the IRS's bad-faith claim as abandoned and makes no findings thereon. *See* Hr'g Tr. 39:7-41:7.

2

tax liability is due solely to the operation of community property and (ii) she exercised no control over his income. *See id.*[2] On December 2, 2020, the Debtor filed the Claim Objection objecting to the IRS's proof of claim on the same grounds raised in her Response.[3]

## FINDINGS OF FACT

At the time of the Hearing, Mrs. Bowman was 68 years of age and living in Houma, Louisiana. *See* Hr'g Tr. 192:10–16. When she was younger, she attended Nicholls State University where she studied nursing, but also attended three semesters of business and accounting classes. *See* Hr'g Tr. 75:11–22. She married William Clarence Bowman ("Mr. Bowman") in 2002 and they lived a comfortable life together until he passed away from cancer on April 4, 2015, at age 58. *See* Hr'g Tr. 193:1–14. At the time of Mr. Bowman's death, Mrs. Bowman was age 61. *Id.* They were married for about twelve years, but had known each other for over twenty years. *See* Hr'g Tr. 202:9–10; 204:12–25. Mrs. Bowman described Mr. Bowman as outgoing and gregarious. *See* Hr'g Tr. 198:12–18. He had many friends and was close to his family. *See id.* She testified that they lived a happy life together.

### A. Formation and Operation of Bowman Ovrcz, LLC

From 2002 to 2008, Mr. Bowman was privately employed, maintaining a houseboat for his employer in Cocodrie, Louisiana. His responsibilities included using the houseboat to entertain his employer's clients, taking those clients fishing, and overseeing the upkeep of the houseboat.

---

[2] Attached as Exhibit A to the Response is the Debtor's *Request for Innocent Spouse Relief* that she submitted to the IRS, which the IRS denied. In addition to the arguments she made in the Response to support an innocent spouse designation, she also alleged that her late husband was abusive toward her as well as secretive and controlling. As discussed below, the Debtor presented no evidence of emotional or physical abuse at the Hearing and denied such abuse upon questioning.

[3] The Debtor subsequently filed a motion for summary judgment which was denied by this Court on July 12, 2021. [ECF Doc. 102].

3

*See* Hr'g Tr. 199:13–18. He was hired as a "W-2" employee, so his employer withheld taxes from his paycheck throughout the year. *See id.*

In 2008, Mr. Bowman formed Bowman Ovrcz, LLC (the "LLC"), which he used to operate his oil-and-gas consulting business. *See* Hr'g Tr. 54:20–55:5; 200:23–201:3. Mrs. Bowman understood that she was not an owner or employee of the LLC. *See* Hr'g Tr. 72:21–73:5. But she was taxed as a 50% owner of the venture, even if only as a passive owner. Mrs. Bowman's Schedule K-1 for 2008 identifies her as a "domestic partner" and a "Limited partner or other LLC member" for the LLC with a 50% share of profit, loss, and capital. *See* IRS Ex. GGG. Whether she actually received distributions from the LLC or whether Mr. Bowman received and controlled 100% of any distributions made by the LLC is unclear. *See* Hr'g Tr. 133:19–135:14. But considering the evidence presented *in toto*, this Court finds that Mrs. Bowman was a 50% member in the LLC and enjoyed the income it produced indirectly, if not directly.

Mrs. Bowman worked full time at an insurance company. *See* Hr'g Tr. 75:23–25 & 238:12–20. But she also participated in the operations of the LLC: she sent and received e-mails on behalf of the LLC; she used a debit and credit card linked to the LLC's account and signed checks on behalf of the LLC; and she withdrew money from the LLC's account and had the ability to review LLC bank account records—all with no reprisal from Mr. Bowman when she did so. *See* Hr'g Tr. 76:16–21; 78:2–85:20; IRS Exs. H, N, Q, T, DD.[4] From 2009 through early 2015,

---

[4] IRS Ex. H.0022 (canceled check #1038 written to cash in the amount of $6,000 dated May 22, 2009); IRS Ex. H.0023 (canceled check #1003 written to cash in the amount of $4,500 dated May 28, 2009); IRS Ex. N.0041 (canceled check #1218 made out to Brenda Bowman in the amount of $3,700 dated October 10, 2011 deposited into her personal bank account); IRS Ex. Q.0050 (canceled check #1281 written to Brenda Bowman in the amount of $6,000 dated October 5, 2012 deposited into her personal bank account); IRS Ex. T.0049 (canceled check #1347 made out to Brenda Bowman in the amount of $7,000 dated December 26, 2013 deposited into her personal bank account); IRS Ex. DD.0006 (canceled check #1383 written to cash in the amount of $6,000 dated March 31, 2015 deposited into her personal bank account). Mrs. Bowman signed and endorsed each of those checks.

4

Mrs. Bowman was responsible for approximately $530,000 in disbursements from the LLC account. *See* IRS Ex. A.; Hr'g Tr. 85:21–88:18. Mrs. Bowman testified that none of those disbursements were applied to any of the outstanding tax debt, but instead were used for ordinary living expenses. *Id.*

### B. The Bowmans' Tax Returns

For each of the years they were married and until Mr. Bowman's untimely death, the couple filed their taxes as "married, filing jointly." Hr'g Tr. 55:69 & 199:25–200:16. Mrs. Bowman testified that she assisted with the filing of their joint taxes by supplying her W-2s and other necessary information, and knew that they were obligated to pay their taxes on time every year. *See* Hr'g Tr. 47:2–48:13. According to the Bowmans' CPA, Pernell Pellegrin of the accounting firm Martin & Pellegrin, he and his staff corresponded extensively and almost exclusively in 2010 with Mrs. Bowman to gather information necessary to file the Bowmans' 2006–2008 tax returns. *See* Hr'g Tr. 110:16–124:19. For tax years 2006 to 2008, the Bowmans' tax returns were filed and paid late. *See* Hr'g Tr. 47:17–50:20; 106:20–132:15; *see also* IRS Exs. K.0089 (check signed by Mrs. Bowman and dated November 5, 2010, for $3,795 for 2007 taxes), K.0090 (check signed by Mrs. Bowman and dated November 3, 2010, for $10,766 for 2006 taxes).

Mrs. Bowman testified that, throughout the years, she had trusted Mr. Bowman to file and pay the taxes; she stated that she trusted him because he was still working and said he was going to handle it. *See* Hr'g Tr. 98:20–99:12. By the end of 2014, however, Mr. Bowman became unable to work due to illness. *See* Hr'g Tr. 52:18–53:11. In June 2014, both of the Bowmans consulted in person with an IRS representative to set up a payment plan for unpaid taxes, but the IRS denied the request because the Bowmans had not filed their 2009–2014 tax returns. *See* Hr'g Tr. 50:21–52:17; 180:16–182:17. In late 2014, Mr. Bowman worked with Success Tax Relief and, in

5

February 2015, was able to file the Bowmans' joint returns for the tax years 2009 to 2013. *See* Hr'g Tr. 221:19–222:22.

### C. The Bowmans' Lifestyle

In October 2009, the couple purchased a new GMC Terrain using LLC funds for approximately $31,000. *See* Hr'g Tr. 64:11–15. For the 2009 tax year, the couple owed $97,000. *See* Hr'g Tr. 63:4–7. In 2010, they remodeled their kitchen for approximately $50,000 and traveled to Hawaii, which was one of the most expensive trips they took together. *See* Hr'g Tr. 63:11–64:21. In 2010, Mrs. Bowman withdrew $84,000 from her employee savings plan and testified that she used some of those funds to pay the 2006, 2007, and 2008 outstanding tax debt. *See* Hr'g Tr. 64:22–65:17. For the 2011 tax year, the couple owed approximately $55,000 to the IRS and owed approximately $37,000 in taxes for tax year 2012. *See* Hr'g Tr. 65:18–20; 66:2–4. In October 2012, the couple took a trip to Las Vegas. *See* Hr'g Tr. 66:5–8. In April 2013, they took a birthday and anniversary trip to Las Vegas and Los Angeles, and also traveled to Virginia, Florida, and Alabama to attend NASCAR races. *See* Hr'g Tr. 66:15–67:12. For the 2013 tax year, they owed approximately $54,000. *See* Hr'g Tr. 66:9–14.[5]

In addition to traveling, the couple also frequently gambled together, about once a month, at various establishments in southeast Louisiana and Mississippi. *See* Hr'g Tr. 57:11–59:16. Some gambling trips were day trips, but many were overnight stays through the weekend. *Id.* Mrs. Bowman testified that her husband had a gambling problem, often losing substantial sums of money at a time. *Id.* Mrs. Bowman testified that she was often concerned about the amount of money lost to gambling, but never brought it up to Mr. Bowman; Mrs. Bowman further testified

---

[5] The couple also took a trip to Guatemala; they paid only for their airfare and stayed at Mr. Bowman's former employer's fishing quarters there. *See* Hr'g Tr. 70:10–18. The record is unclear when this trip occurred.

6

that her concern about his gambling did not translate to a concern about the couples' unpaid tax liability. *Id*.

In August 2014, Mrs. Bowman withdrew $7,200 from her retirement account and deposited it into her personal bank account, and late in June 2014, she borrowed $15,000 to purchase a car for her stepson. *See* Hr'g Tr. 68:3–70:7; IRS Ex. AA. Mrs. Bowman could not recall what the $7,200 was used for, but admitted that it was not applied to any of the couple's outstanding tax debt. *Id.*

### D. Mrs. Bowman's Actions After the Death of Mr. Bowman

After Mr. Bowman passed in April 2015, Mrs. Bowman testified that she entered into a deep depression causing her to neglect her finances for the next two years. *See* Hr'g Tr. 225:9–226:6. She went "into a fog" and was prescribed medication to manage the depression. *Id.* Around the time of Mr. Bowman's death, the LLC account held approximately $45,000—Mr. Bowman's obituary directed donations to go to that account—and Mrs. Bowman received $20,000 in life insurance policy proceeds to cover Mr. Bowman's funeral expenses. *See* Hr'g Tr. 89:4–92:24; 214:21–215:2; 237:6–238:5. She used none of those funds to pay the past-due tax liability. *See* Hr'g Tr. 89:4–92:24. Mrs. Bowman testified that, to avoid being alone, she frequently gambled, stayed out late, and spent hundreds per sitting at various casinos in Southeast Louisiana. *See* Hr'g Tr. 60:5–62:21 & 230:2–12. Although she continued to work during this time at the insurance company, she testified that she did not make good financial decisions for herself and was unable to enjoy her usual pastimes such as bike-riding and fishing. *See* Hr'g Tr. 205:7–206:19. In 2016, she lost her job and nearly lost her home because she had defaulted under the terms of the house note. *Id.* Mrs. Bowman was out of work for approximately six weeks before she secured employment at another insurance company, making less money. *See* Hr'g Tr. 238:12–20.

In 2018, Mrs. Bowman consulted with her attorney regarding the tax debt, eventually seeking tax relief as an "innocent spouse" in July 2019. *See* Hr'g Tr. 225:3–8. The IRS denied her application and Mrs. Bowman filed her chapter 13 Petition on August 27, 2020.

Including Social Security income, Mrs. Bowman currently has a net monthly income of approximately $5,400 which amounts to an annual income of roughly $65,000 per year. *See* Hr'g Tr. 95:2–17. Her monthly expenses according to Schedule J total approximately $3,100, leaving $2,300 at the end of the month. *See* Hr'g Tr. 95:18–96:6. Mrs. Bowman testified that a garnishment is in place that leaves her with approximately $660 to $700 net monthly income. *See* Hr'g Tr. 220:1–4.[6] She holds approximately $80,000 in equity in her home and, at the time of the Hearing, she was sharing her home with her granddaughter and her family who were negatively impacted by Hurricane Ida in September of 2021. *See* Hr'g Tr. 96:7–20.

## CONCLUSIONS OF LAW

### A. The Innocent Spouse Doctrine

"[A]s a general rule, when married persons file a joint income tax return they become jointly and severally liable for the tax due with respect to that return." *In re Wyly*, 552 B.R. 338, 464 (Bankr. N.D. Tex. 2016). But "Congress concluded that under certain circumstances, such liability could be unfair." *Id*. There are three provisions of the Internal Revenue Code wherein a married person may prove that imposing tax liability would be unfair. *See* 26 I.R.C. § 6015(b), (c) & (f).[7] That relief is commonly referred to as "innocent spouse relief." *Coggin v. Comm'r of Internal Revenue*, 157 T.C. 12, 2021 WL 5827338, at *4 (T.C. Dec. 8, 2021). Under § 6015(f) of

---

[6] The Louisiana Department of Revenue garnished $2,450 bi-weekly from 2018 until the bankruptcy filing. [ECF Doc. 1, at 13].

[7] The parties do not dispute that Debtor does not qualify for relief under § 6015(b)–(c); therefore, only § 6015(f) will be analyzed.

the Internal Revenue Code, a spouse may obtain relief from tax liability if she can establish that under "all the facts and circumstances, it is inequitable to hold [her] liable for any unpaid tax." *Haggerty v. Comm'r*, 505 F. App'x 335, 337 (5th Cir. 2013) (quoting 26 I.R.C. § 6015(f)). "Generally, the spouse requesting relief bears the burden of proof." *Todisco v. Comm'r of Internal Revenue*, No. 15657-18S, 2021 WL 4593437, at *9 (T.C. Oct. 6, 2021).

"The Commissioner has issued revenue procedures to guide courts in determining whether a requesting spouse is entitled to relief from joint and several liability." *Haggerty*, 505 F. App'x at 337. Revenue Procedure 2013-34 provides guidance here regarding whether Mrs. Bowman is entitled to equitable relief under § 6015(f). The requirements set forth therein are "categorized as threshold or mandatory requirements, streamlined elements, and equitable factors." *Goode v. Comm'r of Internal Revenue*, No. 14832-18S, 2021 WL 4316848, at *3 (T.C. Sept. 23, 2021). "A requesting spouse must satisfy each threshold requirement to be considered for relief." *Id.* (citing § 4.01, 2013-43 I.R.B. 397, 399–400). If the threshold requirements are met, relief will be granted if the requesting spouse meets each streamlined element. *Id.* (citing Rev. Proc. 2013-34, § 4.02, 2013-43 I.R.B. 397, 400). Otherwise, if the requesting spouse does not satisfy each threshold requirement, equitable factors will be evaluated to determine whether relief is appropriate. *Id.* (citing Rev. Proc. 2013-34, § 4.03, 2013-43 I.R.B. 397, 400–03).

B.     **Mrs. Bowman Fails To Meet the Threshold Requirements**

There are seven threshold requirements that Mrs. Bowman must meet before the streamlined elements may be considered. *See* Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. 397. The seven threshold requirements are written in the conjunctive; therefore, a requesting spouse must satisfy all seven factors before relief can be granted. *Wang v. Comm'r of Internal Revenue*, No. 23344-11, 2014 WL 4976232, at *5 (T.C. Oct. 6, 2014). Those requirements are: (1) the

9

requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under § 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the non-requesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable in full or in part to an item of the non-requesting spouse or an underpayment resulting from the non-requesting spouse's income. *Id.* Regarding the seventh factor, a court may still consider granting relief regardless of whether the understatement or deficiency is attributable to the requesting spouse if any of the following exceptions applies: (1) attribution solely due to operation of community property law; (2) nominal ownership; (3) misappropriation of funds; (4) abuse; or (5) fraud committed by the non-requesting spouse. *Id*. at *10.

Mrs. Bowman asserts she meets all seven threshold requirements, including the seventh factor, which requires the tax liability to be attributable in full or in part to the non-requesting spouse, or alternatively, the tax liability is attributable to the requesting spouse solely due to operation of community property law. *See* Hr'g Tr. 262:2–23; Response, ¶¶ 7–9 & 14. Mrs. Bowman contends that the evidence presented at the Hearing demonstrates that she was not involved in the operations of the LLC such that any income generated by it should be attributed to her. *See* Hr'g Tr. 262:2–23.

This Court disagrees. Although the first six threshold requirements may be met, the seventh is not. The tax liabilities giving rise to Mrs. Bowman's request for relief stem from the income to the Bowmans generated by the LLC. Mrs. Bowman contends that she was "hands off" with their finances generally as well as with the operation of and finances related to the LLC. The

10

evidence presented at the Hearing, however, contradicts those assertions and demonstrates that Mrs. Bowman actively participated in the operations of the LLC. She was a 50% owner of the business, had unfettered access to the LLC's bank account, made regular cash withdrawals from the LLC account, issued checks from the LLC account, provided tax preparation information to Martin & Pellegrin for the LLC, and enjoyed the fruits of the LLC's success. Mrs. Bowman's ownership and active participation in the operation of the LLC causes the income generated by the LLC—as well as the tax liability—to be attributable to her. The evidence leads this Court to conclude that the couple's income tax liability is neither attributable in full or in part to an item of Mr. Bowman or an underpayment resulting from Mr. Bowman's income not attributable to Mrs. Bowman based solely on community property law. Consequently, Mrs. Bowman cannot establish the seventh threshold factor that would entitle her to relief.

Given Mrs. Bowman's failure to meet the threshold requirements, she is ineligible for a streamlined determination, but she may yet qualify for equitable relief under section 4.03 of Revenue Procedure 2013-34.

### C. An Evaluation of the Equitable Factors Weighs Against Granting Relief

Section 4.03 sets out a non-exclusive list of seven subfactors which this Court may consider in granting equitable relief when a requesting spouse does not satisfy all of the threshold elements. Those factors are:

(a) Marital status as of the date the Service made it determination;

(b) Economic hardship;

(c) Knowledge or reason to know that the non-requesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after the filing of the return;

(d) The legal obligation for payment of the tax liability;

(e) Significant benefit from unpaid tax liability;

11

  (f) Compliance with income tax laws; and the

  (g) Mental or physical health of requesting spouse.

Rev. Proc. 2013-34, § 4.03(2), 2013-43 I.R.B. 397. "In evaluating a claim for relief, no one factor or a majority of factors necessarily determines the outcome." *Id.* "The degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." *Id.* Having considered each factor in relation to the evidence presented at the Hearing, this Court finds that the equitable factors do not weigh in favor of relief.

    *1. Marital status as of the date the Service made its determination*

It is undisputed that Mrs. Bowman was no longer married to Mr. Bowman as of the date that the Service denied Mrs. Bowman's request for tax relief as an innocent spouse on August 27, 2020. "If the requesting spouse is no longer married to the non-requesting spouse, this factor will weigh in favor of relief." Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. 397.

A requesting spouse will be treated as being no longer married to the non-requesting spouse only in the following situations:

 (i) The requesting spouse is divorced from the non-requesting spouse,

 (ii) The requesting spouse is legally separated from the non-requesting spouse under applicable state law,

 (iii) The requesting spouse is a widow or widower and is not an heir to the non-requesting spouse's estate that would have sufficient assets to pay the tax liability, or

 (iv) The requesting spouse has not been a member of the same household as the non-requesting spouse at any time during the 12-month period ending on the date the Service makes its determination. For these purposes, a temporary absence (e.g., due to incarceration, illness, business, military service, or education) is not considered separation if the absent spouse is expected to return to the household. A requesting spouse is a member of the same household as the non-requesting spouse for any period in which the spouses maintain the same residence.

*Id*. (citation omitted). Although Mrs. Bowman is no longer married to Mr. Bowman due to his passing, the evidence showed that she is an heir to Mr. Bowman's estate, although the evidence did not reveal whether his estate had sufficient assets to pay the tax liability. Therefore, the Court considers this factor to be neutral to its analysis.

   2.   *Economic hardship*

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse being unable to meet her reasonable basic living expenses. *See Haggerty v. Comm'r*, 505 F. App'x 335, 338 (5th Cir. 2013); *Comm'r v. Neal*, 557 F.3d 1262, 1278 (11th Cir. 2009). Section 4.03(2)(b) of Revenue Procedure 2013-34 provides guidance in determining whether the requesting spouse would suffer economic hardship if relief is not granted:

> [T]he Service will compare the requesting spouse's income to the Federal poverty guidelines (as updated periodically in the Federal Register by the U.S. Department of Health and Human Services under the authority of 42 U.S.C. § 9902(2)) for the requesting spouse's family size and will determine by how much, if at all, the requesting spouse's monthly income exceeds the spouse's reasonable basic monthly living expenses. This factor will weigh in favor of relief if the requesting spouse's income is below 250% of the Federal poverty guidelines, unless the requesting spouse has assets out of which the requesting spouse can make payments towards the tax liability and still adequately meet the requesting spouse's reasonable basic living expenses. If the requesting spouse's income exceeds 250% of the Federal poverty guidelines, this factor will still weigh in favor of relief if the requesting spouse's monthly income exceeds the requesting spouse's reasonable basic monthly living expenses by $300 or less, unless the requesting spouse has assets out of which the requesting spouse can make payments towards the tax liability and still adequately meet the requesting spouse's reasonable basic living expenses. If the requesting spouse's income exceeds 250% of the Federal poverty guidelines and monthly income exceeds monthly expenses by more than $300, or if the requesting spouse qualifies under either standard but has sufficient assets to make payments towards the tax liability and still adequately meet the requesting spouse's reasonable basic living expenses, the Service will consider all facts and circumstances (including the size of the requesting spouse's household) in determining whether the requesting spouse would suffer economic hardship if relief is not granted.

Rev. Proc. 2013-34, § 4.03(2)(b), 2013-43 I.R.B. 397. The 2021 Poverty Guidelines for the 48 Contiguous States for a household of one is $12,880.00. *See* 2021 Poverty Guidelines, ASPE.HHS.gov, https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references/2021-poverty-guidelines (last visited Mar. 2, 2022).

Mrs. Bowman's annual income is approximately $65,000 and her monthly income is around $5,466.29 (including $2,221.50 in Social Security income). [ECF Doc. 10 (Sch. I)]. After paying approximately $3,166.00 in expenses every month, she is left with net monthly income of $2,300 before the garnishment, [ECF Doc. 11 (Sch. J)], and would have $600 of net monthly income after the garnishment. An annual income of $32,200 equals 250% of the Federal poverty level. Mrs. Bowman's annual income exceeds $32,200 and her net monthly income exceeds her reasonable basic monthly living expenses by more than $300. Thus, the Court is left to "consider all facts and circumstances (including the size of the requesting spouse's household) in determining whether the requesting spouse would suffer economic hardship if relief is not granted." Rev. Proc. 2013-34, § 4.03(2)(b), 2013-43 I.R.B. 397.

Mrs. Bowman did not provide any testimony that her current employment was unstable or that she is in poor health and prevented from continuing to work. She provided no evidence that she is paying expenses of anyone other than herself. Furthermore, Mrs. Bowman holds approximately $80,000 in home equity which could be tapped to satisfy a portion of the tax liability. Therefore, this factor weighs against relief.

> 3. *Knowledge or reason to know that the non-requesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after the filing of the return*

"This factor will weigh in favor of relief if the requesting spouse reasonably expected the non-requesting spouse to pay the tax liability reported on the return." Rev. Proc. 2013-34, § 4.03(2)(c)(ii), 2013-43 I.R.B. 397.[8] "This factor will weigh against relief if, based on the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the non-requesting spouse would or could pay the tax liability shown on the return." *Id*.

> For example, if prior to the return being filed, or the date the requesting spouse reasonably believed the return was filed, the requesting spouse knew of the non-requesting spouse's prior bankruptcies, financial difficulties, or other issues with the Service or other creditors, or was otherwise aware of difficulties in timely paying bills, then this factor will generally weigh against relief.

*Id*.[9] As to whether a requesting spouse had "reason to know" that the non-requesting spouse would not or could not pay the couple's tax liability, this Court can consider, among other things,

---

[8] "A reasonable expectation will be presumed if the spouses submitted a request for an installment agreement to pay the tax reported as due on the return." Rev. Proc. 2013-34, § 4.03(2)(c)(ii), 2013-43 I.R.B. 397. "To benefit from the presumption, the request for an installment agreement must be filed by the later of 90 days after the due date for payment of the tax, or 90 days after the return was filed." *Id*. The evidence shows that the Bowmans did not timely request installment agreements; therefore, the Court will not presume a reasonable expectation on the part of Mrs. Bowman that Mr. Bowman would pay the tax liability on the returns.

[9] As further provided by Revenue Procedure 2013-34:

> Depending on the facts and circumstances, if the requesting spouse was abused by the non-requesting spouse (as described in section 4.03(2)(c)(iv)), or the non-requesting spouse maintained control of the household finances by restricting the requesting spouse's access to financial information, and because of the abuse or financial control, the requesting spouse was no able to question the payment of the taxes reported as due on the return or challenge the non-requesting spouse's assurance regarding payment of the taxes for fear of the non-requesting spouse's retaliation, this factor will weigh in favor of relief even if the requesting spouse knew or had reason to know about the non-requesting spouse's intent or ability to pay the taxes due.

Rev. Proc. 2013-34, § 4.03(2)(c)(ii), 2013-43 I.R.B. 397. Mrs. Bowman provided no evidence that she suffered mental or physical abuse by Mr. Bowman or that he restricted her access to the household's financial information and denied the presence of such abuse upon questioning. *See* Hr'g Tr. 55:6–57:10.

15

> the requesting spouse's level of education, any deceit or evasiveness of the non-requesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business or household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.

Rev. Proc. 2013-34, § 4.03(2)(c)(iii), 2013-43 I.R.B. 397.

Mrs. Bowman is an educated and not unsophisticated person. As early as 2010, Mrs. Bowman was aware that several years of income tax returns had not been paid and several had not even been filed. In 2010, Mrs. Bowman collaborated extensively with Martin and Pellegrin to get the Bowmans' tax returns filed for years 2006 to 2008. In June 2014, both of the Bowmans consulted in person with an IRS representative to set up a payment plan for unpaid taxes, but the IRS denied the request because they had not filed their 2009–2014 tax returns. The Court concludes that Mrs. Bowman actually knew of the growing tax liability for several tax years. She claims she deferred to Mr. Bowman to handle the tax liability, but in the meantime, she had knowledge of and access to the LLC and household finances and could see and direct where the LLC's income was spent. She also knew that her husband had a gambling problem. That knowledge, plus her education and participation in the LLC finances indicate that Mrs. Bowman knew or had reason to know that Mr. Bowman would not pay the couple's tax liability within a reasonable time. Thus, this factor weighs against affording relief.

### 4. *The legal obligation for payment of the tax liability*

"For purposes of this factor, a legal obligation is an obligation arising from a divorce decree or other legally binding agreement." Rev. Proc. 2013-34, § 4.03(2)(d), 2013-43 I.R.B. 397. This factor is not applicable here and is, therefore, neutral.

      5.     *Significant benefit from unpaid tax liability*

This factor concerns "[w]hether the requesting spouse significantly benefitted from the unpaid income tax liability or understatement." Rev. Proc. 2013-34, § 4.03(2)(e), 2013-43 I.R.B. 397. "A significant benefit is any benefit in excess of normal support." *Id*. "For example, if the requesting spouse enjoyed the benefits of a lavish lifestyle, such as owning luxury assets and taking expensive vacations, this factor will weigh against relief." *Id*. During the tax years at issue, Mrs. Bowman enjoyed vacationing with her husband, traveling to Las Vegas, Los Angeles, and Hawaii, as well as across the Southeast to attend NASCAR races. She also routinely gambled at casinos with Mr. Bowman. In addition to traveling, the couple remodeled their kitchen during the pertinent years for $50,000. The Court finds that this factor weighs against relief.

      6.     *Compliance with tax laws*

Also relevant is "[w]hether the requesting spouse has made a good faith effort to comply with the income tax laws in the taxable years following the taxable year or years to which the request for relief relates." *See* Rev. Proc. 2013-34, § 4.03(2)(f), 2013-43 I.R.B. 397. The evidence shows that at least three years went by before Mrs. Bowman attempted to resolve the outstanding tax liabilities in existence at the time Mr. Bowman passed away. Mrs. Bowman finally consulted with her current counsel in 2019 to handle the existing tax liabilities. The record in this case reveals that current counsel prepared Mrs. Bowman's 2019 taxes, which were filed in July 2020 and Mrs. Bowman filed an affidavit into the record attesting that tax returns have been filed for years 2016 to 2019. [ECF Docs. 13 & 19]. The Court acknowledges, however, the effect that grief can have on a person's behavior after the loss of a loved one; therefore, the Court is unwilling to weigh this factor against Mrs. Bowman.

7. *Mental or physical health of the requesting spouse*

"This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the return or returns for which the request for relief relates were filed . . . or at the time the requesting spouse requested relief." Rev. Proc. 2013-34, § 4.03(2)(g), 2013-43 I.R.B. 397. The Court is instructed to consider "the nature, extent, and duration of the condition, including the ongoing economic impact of the illness." *Id.* "If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral." *Id.*

The record shows that, during the years that the Bowmans failed to file and pay their taxes, Mrs. Bowman was in good physical and mental health. Mrs. Bowman presented no evidence that she was in poor mental or physical health in 2010 when the 2006–2008 returns were filed or in early 2015 when the 2009–2013 returns were filed. In mid-2019 when she requested tax relief as an "innocent spouse," Mrs. Bowman testified that she had been grieving for a few years, but was able to maintain a full-time job as an Account Manager at an insurance company. She also maintained relationships with her family and prevented a foreclosure on her home. Although Mrs. Bowman was certainly grieving the loss of her husband, the evidence presented regarding her mental and physical health is insufficient to establish that her health interfered with her ability to manage her finances during their marriage and after Mr. Bowman's death. Because she was not in poor physical or mental health, this factor is neutral.

After hearing the evidence presented at the Hearing, it is apparent to the Court that the Bowmans were unprepared for the tax implications associated with Mr. Bowman starting his own business using the corporate structure of a limited liability company and being self-employed. They would not be the first to suffer tax consequences as a result. After giving each equitable

factor its due weight, however, this Court must nevertheless decline to grant Mrs. Bowman equitable relief from joint and several tax liability under the innocent spouse doctrine.

### D. Mrs. Bowman Owes Noncontingent, Liquidated Unsecured Debts That Exceed the Jurisdictional Debt Limit

The IRS filed the Motion To Dismiss requesting dismissal of Mrs. Bowman's Petition on the basis that the Debtor's noncontingent, liquidated, unsecured debts exceed the statutory jurisdictional limit to qualify for chapter 13 bankruptcy relief. Section 109 of the Bankruptcy Code provides that "only an individual with regular income who owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 . . . may be a debtor under chapter 13." 11 U.S.C. § 109(e). The text of the statute is clear and unambiguous; therefore, this Court will not look beyond the text to resolve Mrs. Bowman's eligibility to be a chapter 13 debtor. *See Hammers v. IRS (In re Hammers)*, 988 F.2d 32, 34 (5th Cir. 1993).

The IRS filed Proof of Claim No. 4 on September 16, 2020, asserting a secured claim in the amount of $96,759.00, a priority unsecured claim in the amount of $2,097.38, and a general unsecured claim of $525,321.64. The proof of claim complies with the requirements set forth in Rule 3001 of the Federal Rules of Bankruptcy Procedure and is therefore entitled to *prima facie* validity as to the amount of the claim. *See* FED. R. BANKR. P. 3001(f). The total amount of unsecured debt listed in Schedule E/F is $678,230.03, the majority of which is the IRS tax debt at issue.

This Court's finding that Mrs. Bowman is not entitled to relief under § 6015 of the Internal Revenue Code as an "innocent spouse" resolves any dispute as to whether she owes the amounts claimed by the IRS. The IRS debt is now liquidated and must be included in the § 109(e) unsecured debt calculation. Therefore, this Court finds that Mrs. Bowman is ineligible to be a chapter 13

debtor as her noncontingent, liquidated, unsecured debts exceed the jurisdiction limit for unsecured debt.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Debtor's Claim Objection is **OVERRULED**;

**IT IS FURTHER ORDERED** that the IRS's Motion To Dismiss is **GRANTED**; and

**IT IS FURTHER ORDERED** that this case is hereby **DISMISSED**.

New Orleans, Louisiana, March 3, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE